**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MELISSA MCKINLEY,

Plaintiff,

v. CIVIL ACTION NO. 2:26-cv-00166

WORTHINGTON HEALTHCARE CENTER, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are two motions: Defendant Al Lawson's Motion to Dismiss, [ECF No. 11], and the Business Defendants'[1] Motion to Dismiss, [ECF No. 13]. The Plaintiff Melissa McKinley responded, [ECF No. 16], and the Defendants replied, [ECF No. 17]. For the reasons that follow, Lawson's Motion to Dismiss, **[ECF No. 11]**, is **GRANTED**, the Business Defendants' Motion to Dismiss, **[ECF No. 13]**, is **GRANTED**, and the Complaint is **DISMISSED**.

### I. BACKGROUND

This case arises from alleged racial discrimination in a hostile work environment that resulted in retaliation against and constructive discharge of Plaintiff. *See* [ECF No. 1]. The facts, as summarized by the court, are viewed in the light most favorable to Plaintiff.[2]

From September 2023 to March 2024, Plaintiff, "a partially African American female,"

---

[1] The Complaint names four business entities: Worthington Healthcare Center; Thirty-Six Leasing, LLC; Communicare Health Services, LLC; and WVNH EMP, LLC. [ECF No. 1].

[2] *Rice v. Adams*, 172 F. 4th 428, 432 (4th Cir. 2026) (At this stage the court must "accept the complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor.").

worked as a human resources ("HR") manager at Worthington Healthcare Center ("Worthington") in Parkersburg, West Virginia. [ECF No. 1, ¶ 2]. Her description of her employment is bleak: she was "subjected to a severe and pervasive racially hostile work environment; was directed to perform illegal acts; was retaliated against for refusing to do so and for reporting racial discrimination and patient safety violations; and was constructively discharged." [ECF No. 1, ¶ 2].

Specifically, Plaintiff alleges that she "witnessed, documented, and [] reported a pervasive pattern of racial hostility and discrimination directed at" minority employees. *Id.* ¶ 18. In the Complaint she lists multiple examples of racial discrimination and the actions she took to document each. *Id.* ¶¶ 19–26. None of which, as alleged, were directed at her. Plaintiff then informed individual Defendant Al Lawson, Executive Director of Worthington, that the facility needed "race-based sensitivity and harassment training in response to the facility's demonstrated failure to retain minority employees," which Lawson rejected. *Id.* ¶ 27.

On other occasions Lawson became "hostile" toward Plaintiff when she issued a warning to an employee and refused to place an assistant on a pretextual forced leave of absence. *Id.* ¶¶ 28–29. And after these actions, Plaintiff was subjected to the following:

> she was called into Lawson's office for pretextual "status updates" designed to belittle and micromanage her[;] she was interrogated by Lawson for consulting her corporate regional representative; she was reprimanded for attempting to ensure adequate staffing; she was denied a proper office and orientation space despite corporate regional directives; and she was placed in increasingly untenable working conditions that ultimately compelled her resignation.

*Id.* ¶ 30.

In addition, Plaintiff alleges that Lawson directed her to interfere with another employee's approved Family Medical Leave Act ("FMLA") leave; instructed her to maintain insufficient staffing on resident floors; and reprimanded her over calling in additional staff. [ECF No. 1, ¶¶ 31–32]. Plaintiff witnessed one employee falsifying OSHA records, and she witnessed other

employees mentally and emotionally abusing the Worthington residents. *Id.* ¶¶ 33–34. She reported these to Lawson, but no remedial action was taken. *Id.* As for other direct conflicts with Lawson, Plaintiff alleges three more related to her refusal to carry out Lawson's allegedly wrong instruction or Lawson's interference with Plaintiff's job duties. *Id.* ¶¶ 35–37.

Worthington Healthcare Center, a nursing facility located in Parkersburg, West Virginia, is one of the four named Business Defendants in this action. [ECF No. 1 ¶ 6]. Worthington is Plaintiff's employer. *Id.* Thirty-Six Leasing, LLC, is an Ohio company with a principal place of business in West Virginia, and "does business as Worthington Healthcare Center." *Id.* ¶ 7. Communicare Health Services, LLC is "the corporate parent and/or operator of Worthington" and allegedly a "joint employer" of Plaintiff. *Id.* ¶ 8. WVNH EMP, LLC is an Ohio company with its principal office in Ohio and does business as Communicare Health Services. *Id.* ¶ 9.

In her Complaint, Plaintiff asserts ten counts, and Count One is asserted against all Defendants while Counts Two through Ten are asserted against only the Business Defendants. The counts are race discrimination, hostile work environment, retaliation, and constructive discharge under 42 U.S.C. § 1981 (Count One); FMLA Interference and Retaliation (Count Two); False Claims Act Anti-Retaliation (Count Three); ADA Associational Discrimination and Retaliation (Count Four); ERISA/COBRA Notice Violations (Count Five); West Virginia Human Rights Act violations (Count Six); West Virginia Nursing Home Whistleblower Protection violations (Count Seven); West Virginia Patient Safety Act violations (Count Eight); West Virginia Wage Payment and Collection Act violations (Count Nine); and common law wrongful discharge (Count Ten).

## II. LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Generally, a pleading under the Federal

Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (Goodwin, J.) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

## III. DISCUSSION

### A. Defendant Al Lawson's Motion to Dismiss

Within Count One of the Complaint, Plaintiff asserts four different theories of liability, all under 42 U.S.C. § 1981, each one against all Defendants. [ECF No. 1, ¶¶ 43–50]. Those theories are (1) race discrimination, (2) hostile work environment, (3) retaliation, and (4) constructive discharge.

Defendant Lawson asserts that the Complaint does not plausibly allege that he took any adverse action against Plaintiff *because* she is partially African American. [ECF No. 12, at 3–5].

As such, there can be no individual liability against Lawson under 42 U.S.C. § 1981. *Id.* Lawson further asserts that each of the individual theories under Section 1981 fail to plausibly allege a claim. *See id.* Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 383 (1982).

Section 1981 can only be violated "by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 391. And an action under Section 1981 "must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). To prevail under Section 1981 "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020).

Causation is where Count One fails. It is true that Plaintiff alleges a number of managerial failures, negligence, or even workplace incompetence. [ECF No. 1, ¶¶ 3, 4, 17, 19–37]. Lawson, as alleged, micromanaged the Plaintiff, berated her at times, did not listen to her advice, and failed to act on reports she made. *Id.* Plaintiff certainly alleges that Lawson was not fit for management. But the Complaint does not allege that any action taken by Lawson was motivated by the Plaintiff's race. That is, no where does the Complaint allege that Lawson mistreated Plaintiff *because* of her race.

At most the Complaint sparsely alleges two facts related to causation: (1) Lawson was

aware that Plaintiff was partially African American and (2) Lawson once made a comment in which he "questioned whether the [employee] minorities 'did their jobs.'" [ECF No. 1, ¶¶ 10, 18, 27]. To the first, pleading knowledge of Plaintiff's race is not nearly enough to plausibly allege that any adverse action taken against her by Lawson as an individual was because of her race. To the second, Plaintiff offers no causation between that comment against others—in response to an employee retention initiative—and any adverse action against her.

Of course, the Complaint is full of insensitive, charged, and racist comments about *other* minority employees spoken by *other* white employees. *Id.* ¶¶ 19–26. But nowhere does the Complaint allege that Lawson spoke, sanctioned, or assented to any of them. Indeed, the Complaint alleges that Lawson was ineffectual and failed to deal with a number of issues including the quality of care, employee retention, and employee training. Maybe this is true. But without plausible allegations that because of Plaintiff's race Lawson took adverse actions against her, she cannot pursue her Section 1981 claim for individual liability against him.

For these reasons,[3] Defendant Lawson's Motion to Dismiss, **[ECF No. 11]**, is **GRANTED**. Count One, as it is alleged against Defendant Lawson, is **DISMISSED**.

### B. Business Defendants' Motion to Dismiss

As it relates to the Business Defendants, Plaintiff's Complaint suffers a different fatal flaw. Plaintiff's ten scattershot counts are alleged against all of the Business Defendants, but they fail to name the Defendants individually, allege specific facts about each one, and put the Defendants on notice of the allegedly wrongful conduct. This flaw—improperly grouping Defendants together—cannot survive a motion to dismiss.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain

[3] Because Plaintiff has failed to plausibly allege but-for causation in her Section 1981 claim—a prerequisite to any individual liability—I decline to address her four separate theories of liability.

statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted Rule 8 to require that a complaint " must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And facial plausibility is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

Therefore, a plausibly alleged complaint must provide enough facts for the court to associate specific violative actions with specific defendants that cause identifiable harm to a plaintiff. This makes sense. "[C]ourts have reasoned that requiring specific factual allegations for each defendant gives fair notice to *that* defendant of the plaintiff's claim and the underlying factual support." *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (applied to a complaint alleging Eighth Amendment violations). To do otherwise would permit an action to go forward without really understanding the allegations, the alleged actions of the defendants, or the resultant harm. Simply "[l]umping defendants together won't do." *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (applied to a complaint alleging Fourteenth Amendment violations). *See also Kyer v. Thomas Health System, Inc.*, 756 F. Supp. 3d 75, 85–86 (S.D. W. Va. 2024) (Goodwin, J.) (applied to a False Claims Act *qui tam* action) *aff'd* 178 F. 4th 119 (4th Cir. 2026); *Barrett v. Board of Educ. of Johnston County, N.C.*, 590 Fed. App'x 208, 210–11 (4th Cir. 2014) (per curiam) ("In the complaint, the Appellants failed to allege which defendant was responsible for which violation, sometimes pleading that all the defendants were responsible."); *Elias v. American Financial Resources*, No. 24-489-BAH, 2026 WL 479069, at *7 (D. Md. Feb. 20, 2026) (dismissing a complaint that globally alleged "defendants" in counts for breach of contract, breach of trust, and

federal statutory violations); *Heym v. APG Housing, LLC*, No. 1:23-cv-02092-JRR, 2024 WL 2302306, at *2 (D. Md. May 21, 2024) (dismissing a complaint that globally alleged "defendants" in counts for negligence, breach of conduct, and other state claims); *Curtin v. Watts*, No. 1:25CV782, 2026 WL 1413679, at *4 (M.D.N.C. May 20, 2026) (same analysis and result applied to a count for tortious interference with a business expectancy).

"A plaintiff who makes only 'collective allegations against all "Defendants"'—without specifying how each individual defendant interacted with her or bore responsibility for the alleged constitutional deprivation—has not stated a plausible claim against any defendant." *Rice*, 172 F. 4th at 432. Here that is exactly what Plaintiff does in her Complaint against the Business Defendants.

Consider Count Two: Plaintiff alleges that all four of the Business Defendants interfered with FMLA leave (not her own, but another's),[4] and then retaliated against Plaintiff for opposition to that interference. In paragraph 51 Plaintiff alleges that Defendant Worthington "employed 50 or more employees at/or within 75 miles of the Parkersburg facility, and is a covered employer under the FMLA." [ECF No. 1, ¶ 51]. But nowhere else in Count Two does Plaintiff name another Business Defendant. Without tying the conduct to any of the Business Defendants, Plaintiff flatly alleges that her "subsequent reprimand, escalating retaliation, and constructive discharge constitute FMLA retaliation." [ECF No. 1, ¶ 53]. Even a charitable reading of the Complaint would leave anyone wondering who exactly did what to Plaintiff. It is impossible to determine which Business Defendants should be on notice for specific unlawful practices. Despite this, Plaintiff asserts that each of the Business Defendants are liable for interfering with FMLA leave—

[4] Whether Plaintiff can even bring an FMLA interference claim for the interference of another person's FMLA rights is a different question I do not reach. I note, however, that Plaintiff's Complaint contains myriad racial references and disparaging remarks about others, but none of them are directed to Plaintiff herself. Wholesale reliance on others' experiences, appears, at least at this time, dubious.

somehow.

Count Three is the same. Defendant Worthington is mentioned once as an entity that "receives Medicare and/or Medicaid reimbursement as a long-term care facility." [ECF No. 1, ¶ 56]. But nowhere else is another Defendant mentioned. And Plaintiff again states, without any relation to a single Defendant, that she "was subjected to retaliation including reprimands, micromanagement, denial of resources, and constructive discharge." [ECF No. 1, ¶ 59].

Counts One, Six, and Seven fail to name even a single Business Defendant. Instead, Plaintiff alleges in Count Six that "Defendants discriminated against McKinley on the basis of race, subjected her to a racially hostile work environment, and retaliated against her for opposing and reporting discriminatory practices, all in violation of the West Virginia Human Rights Act." But each Defendants' specific conduct remains a mystery.[5] Count One is the same as it relates to *any* of the Business Defendants. Count Seven mentions no Defendant at all.

These are but a few examples from the Complaint of Plaintiff's blunderbuss pleading. It is true that the beginning of the Complaint alleges in single sentences who the Business Defendants are: corporate relationships, parent-child entities, or some doing business as others. Despite these relationships, however, Plaintiff makes no effort to specifically say which business entity was responsible for which action or how they interacted with her.

Considering a similarly insufficient pleading, the Fourth Circuit came to the same conclusion. *Langford*, 62 F.4th at 125. The Fourth Circuit held, even drawing all reasonable inferences in the plaintiff's favor, he failed to identify who the defendants were, "in what capacity each [d]efendant interacted with [plaintiff], or how (*or even if*) each Defendant was responsible

[5] Count Six also suffers from the same deficiency as Count One against Defendant Lawson. The Complaint does not allege that any Business Defendant took an adverse action against Plaintiff *because* of her race. Without causation, the West Virginia human rights act claim, like the federal claim, cannot survive.

for [his] medical treatment." *Id.* (emphasis added). Plaintiff generally alleged that "defendants" harmed him. This, the court held, was insufficient.

Of course, I do not hold that a Plaintiff must know every fact, every detail that supports her claim and allege them in the Complaint. There are certainly times when a plaintiff who has suffered harm may only generally know the identity and a few discrete actions taken by a specific defendant. And in those cases, a complaint is likely to survive this initial pleading stage. *Langford*, 62 F.4th at 126.

But here, when Plaintiff asserts ten separate counts against a collective group of four Defendants and makes no effort to differentiate the Defendants or even name them, the Complaint is deficient. *Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Accordingly, the Business Defendants' Motion to Dismiss, [ECF No. 13], is **GRANTED**.

## IV. CONCLUSION

For these reasons, Defendant Lawson's Motion to Dismiss, **[ECF No. 11]**, is **GRANTED**. Count One, as it is alleged against Defendant Lawson, is **DISMISSED**. The Business Defendants' Motion to Dismiss, **[ECF No. 13]**, is **GRANTED**, and the counts against those Defendants are **DISMISSED**. The Motion to Stay Discovery While Defendants Motions to Dismiss Are Pending, **[ECF No. 28],** is **DENIED as moot.** In light of this opinion, the Complaint is **DISMISSED.**

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 21, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE